60 F.3d 823
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Larry H. MICKALIS, Plaintiff-Appellant,
v.
TOWN OF SUMMERVILLE; Allen T. Freese, individually and in
his official capacity, Defendants-Appellees,
and
Raymond NASH; Marco Dierna; Frank Nigro, individually and
in his official capacity, Defendants.
 No. 94-1641.
 United States Court of Appeals, Fourth Circuit.
 Argued April 5, 1995.
Decided July 14, 1995.
 
 ARGUED: Randall Hayden Johnson, Charleston, South Carolina, for Appellant. James Albert Stuckey, Jr., Charleston, South Carolina, for Appellees. ON BRIEF: Stephanie P. McDonald, Charleston, SC for Appellees.
 Before RUSSELL and LUTTIG, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Larry H. Mickalis brought an action against the Town of Summerville and three of its police officers alleging false arrest, malicious prosecution, and excessive force in arrest in violation of 42 U.S.C. Sec. 1983 and pendent state laws. Mickalis received a jury trial before a federal magistrate judge and recovered on some of his claims. Unsatisfied with his recovery, Mickalis challenges three evidentiary rulings of the magistrate judge and seeks a new trial. We find no merit in Mickalis' arguments and affirm the judgment of the district court.
 
 I.
 
 2
 On September 21, 1989, Hurricane Hugo devastated the town of Summerville, South Carolina. In an attempt to preserve order and to prevent looting, the town imposed a curfew.
 
 
 3
 Mickalis was the owner of a pawn shop outside the town's limits. He had approximately 2000 firearms on the premises and became concerned that looters would steal the firearms. He asked James A. Preacher, then a lieutenant with the Berkeley County Sheriff's Department, to post a National Guardsman at his shop. Informed that the Summerville Police Department made such assignments, Mickalis contacted Lieutenant Al Freese of the Summerville Police Department, who complied and arranged for a Guardsman to be posted on or near Mickalis' pawn shop. On the second night after the hurricane, however, the Guardsman was ordered to move to another location.
 
 
 4
 Mickalis contacted Preacher again. The Sheriff's Department lacked the manpower to help Mickalis, but Preacher deputized him so that he could patrol his store and carry a weapon after curfew hours.
 
 
 5
 After patrolling his store for nine days, he decided on September 30, 1989 to spend the evening at home. Late in the evening, however, an employee informed him that he heard noises around the pawn shop. As Mickalis was driving across town toward his store, Officer Marco Dierna of the Summerville Police Department stopped him for driving in violation of the curfew. The officer also found a loaded .38 caliber pistol on the floorboard by the passenger's seat. Although Mickalis explained that he was licensed to carry the gun and was deputized to patrol his premises after curfew hours, Officer Dierna said he would be arrested.
 
 
 6
 Officer Bill French of the Summerville Police Department took charge and allowed Mickalis to drive to his pawn shop to produce his firearm license. Before they entered the pawn shop, however, Officer French confiscated the gun and told Mickalis they would "sort this stuff out" in the morning. Mickalis went to the police station that morning and spoke with Lieutenant Allen T. Freese. After Officer Freese informed Mickalis that he could not return Mickalis' gun, they began yelling at each other. Eventually, Officer Freese ordered an officer to arrest Mickalis for disorderly conduct. Mickalis was later charged with unlawful possession of a firearm.
 
 
 7
 At his state court trial on the indictment for unlawful possession of a firearm, the judge considered whether to direct a verdict in favor of Mickalis. He asked Mickalis whether he was planning on suing any of the police officers if he directed a verdict in his favor. Mickalis responded that he would not. Apparently unsatisfied, the judge placed Mickalis under oath and asked him again whether he was planning on suing any of the police officers. Mickalis again responded in the negative. The judge then directed a verdict in favor of Mickalis.
 
 
 8
 Nonetheless, Mickalis brought an action against the Town of Summerville, Police Chief Nash, and Officers Marco Dierna, Frank Nigro, and Allen T. Freese. He asserted a claim under 42 U.S.C. Sec. 1983 for violations of his First, Fourth, and Fourteenth Amendment rights. He also brought state law claims for false arrest and malicious prosecution. A federal magistrate judge presided over the jury trial.
 
 
 9
 The jury awarded Mickalis a total of $5,500 against Officer Freese on his Fourth Amendment claim for false arrest, his Fourteenth Amendment claim for malicious prosecution, and his state law malicious prosecution claim. The jury found in favor of Officer Freese on Mickalis' First Amendment claim, and in favor of the Town of Summerville and Police Chief Raymond Nash on the remaining claims. Officer Freese at first filed a notice of appeal, but he later changed his mind and paid the judgment.
 
 
 10
 Despite winning a $5,500 judgment, Mickalis now appeals and, apparently, seeks a new trial. He claims that the magistrate judge made several erroneous rulings at trial.
 
 II.
 
 11
 Mickalis first challenges the denial of his pretrial motion in limine to preclude defendants from referring to his statement, made under oath before the state court judge, that he did not plan on suing the police officers. The defendants argued that Mickalis' statement should be admissible as to his credibility. Mickalis argued that the statement was irrelevant and highly prejudicial; he believed the statement to be true when he made it, but events that transpired after the state court proceedings convinced him to bring suit against the police despite his promise under oath to the state court judge.
 
 
 12
 The magistrate judge agreed with the defendants that Mickalis' promise not to sue the police officers was admissible as to Mickalis' credibility. In allowing the statement as impeachment evidence, the magistrate judge stated that Mickalis could explain on the stand that later circumstances justified his decision to bring legal action despite his earlier promise. The defendants assured the magistrate judge that they would use the statement only for impeachment purposes during Mickalis' testimony. The magistrate judge also assured Mickalis that he would issue a curative instruction informing the jury that they could consider the statement only to evaluate the credibility of the witness.
 
 
 13
 On appeal, Mickalis does not argue that the defendants used the statement for a reason other than to impeach Mickalis's credibility or that the magistrate judge did not issue a curative instruction. Mickalis simply argues again that his statement to the state court judge was irrelevant and prejudicial. The district court's admission or exclusion of evidence is reviewed for abuse of discretion, Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1357 (4th Cir.1995), as is its denial of motion for a new trial, Chesapeake Paper Products Co. v. Stone & Webster Engineering Corp., 51 F.3d 1229, 1237 (4th Cir.1995).
 
 
 14
 We first emphasize that it may well be argued that the state court judge had no authority to require Mickalis, as a condition of receiving a directed verdict in his favor, to state in open court under oath that he would not sue the police officers. If Mickalis was entitled to a directed verdict, the state court judge had a duty to grant it regardless of Mickalis' intentions on suing the officers. It is not the role of judges to protect police officers or anyone else from civil suit.
 
 
 15
 Given the specious circumstances under which Mickalis' statement was exacted, it is not at all clear that the statement should have been admitted in Mickalis' civil action. Nonetheless, given the circumstances of this case and considering that Mickalis received a verdict in his favor on some of his claims, we find that the admission of Mickalis' statement to the state court judge did not cause sufficient prejudice to Mickalis to warrant reversal. Furthermore, Mickalis had the opportunity to explain to the jury in his testimony that he did not intend to sue the police officers when he made his statement to the state court judge, but that circumstances after the state court proceedings forced him to reconsider. We find that this opportunity to explain his actions negated or sufficiently diminished any prejudice caused by the admission of his statement to the state court judge. We conclude that the district court did not abuse its discretion in allowing the defendants to use Mickalis' statement for impeachment purposes.
 
 III.
 
 16
 Mickalis also challenges the magistrate judge's refusal to allow Mickalis to call Sheriff M.C. Cannon as a witness. At trial, Lieutenant Preacher testified that he had deputized Mickalis, an action that allowed him to carry a handgun. When Police Chief Nash took the stand, however, he questioned whether Preacher had the authority to deputize Mickalis. In an attempt to rehabilitate Preacher's damaged testimony, Mickalis sought permission to call Sheriff Cannon as a witness, even though Cannon had not been listed as witness prior to trial. Mickalis expected that Cannon's testimony would confirm that Preacher had in fact properly deputized Mickalis and would bolster Preacher's good character. Mickalis claimed that Nash's testimony caught him by surprise because it did not appear in Nash's deposition; if he had known that Nash would contest Preacher's authority to deputize Mickalis, he would have listed Cannon as a witness before trial.
 
 
 17
 The magistrate judge did not allow Sheriff Cannon to testify. He held that allowing Cannon to testify as a surprise, last-minute witness would be unfair to the defendants, especially considering that Mickalis knew about Cannon from the beginning of the case. The magistrate judge explained that getting adverse testimony is one of the risks of calling an opposing party as an adverse witness, and he suggested that Mickalis try to impeach Nash by cross-examining him about the discrepancies between his deposition testimony and his court testimony. The magistrate judge also concluded that Cannon could not testify to Preacher's good character because Preacher's reputation had not been challenged. Instead, he reasoned that "in every case, ... you have witnesses get on the stand and tell different stories. That does not put their character in issue." Joint Appendix ("J.A.") 136. As the magistrate judge explained, the fact that Nash's testimony contradicted Preacher's does not mean that Nash had challenged Preacher's reputation for truthfulness.
 
 
 18
 We review a district court's decision concerning the exclusion of witnesses for abuse of discretion. Adelman v. Baker, Watts & Co., 807 F.2d 359, 369 (4th Cir.1986). When reviewing a district court's exercise of discretion to allow or exclude a witness, this Court considers several factors:
 
 
 19
 1. the surprise to the party against whom the witness was to have testified;
 
 
 20
 2. the ability of the party to cure that surprise;
 
 
 21
 3. the extent to which allowing the testimony would disrupt the trial; 4. the explanation of the party's failure to name the witness before trial; and
 
 
 22
 5. the importance of the testimony.
 
 
 23
 Id. In this case, Mickalis surprised the defendants by trying to call Cannon as a witness. Because Mickalis had not listed Cannon as a witness before trial, the defendants had not deposed him. Because the parties were already three days into trial, the defendants could not have prepared for the surprise witness without significantly disrupting the trial. Furthermore, wrongly guessing that a witness' testimony would not be needed is not a sufficient explanation for failing to name a witness before trial.
 
 
 24
 Because none of the Adelman factors weigh in Mickalis' favor, we conclude that the magistrate judge did not abuse his discretion in refusing to allow Sheriff Cannon to testify.
 
 IV.
 
 25
 Finally, Mickalis argues that, during closing argument, the defendants' counsel made improper references to the fact that the defendants would be personally liable for any damages awarded by the jury. Specifically, the defendants' counsel stated:
 
 
 26
 So, Ray Nash is basically being charged for--a man who saw his duty and did his duty, and this vindictive, poisoned plaintiff is now here in court, after being in two other courts, to ask for damages personally against these officers. Not against the Town of Summerville, but that these three officers be personally liable.
 
 
 27
 J.A. 152 (emphasis added). Later in the closing argument, the defendants' counsel argued that Mickalis had not introduced evidence showing the amount of money he spent on attorney's fees, which he was claiming as damages. To dramatize his argument, the defendants' counsel stated:
 
 
 28
 I mean, aren't you entitled, if you're going to take [money] out of somebody else's pocket, if you're going to move the money from this side of the room from three dedicated public servants and move it over to this side of the room to this pawn dealer, then you ought to have some verification to do it.
 
 
 29
 J.A. 165. Although Mickalis did not object to these statements at trial, he now contends that these statements were improper references to the personal liability of the individual defendants.
 
 
 30
 We need not determine whether these statements were improper because statements during closing arguments warrant reversal only if they influenced the jury in such a way that substantial prejudice resulted to the opposing party. Mayall v. Peabody Coal Co., 7 F.3d 570, 573 (7th Cir.1993). We do not see how Mickalis was substantially prejudiced by the isolated statements of the defendants' counsel. Furthermore, at the beginning of its charge to the jury, the district court explained:
 
 
 31
 In your deliberations you should consider only the evidence; not the arguments of lawyers, but the evidence.
 
 
 32
 J.A. 177A. Any prejudice that may have resulted from the statements of the defendants' counsel was likely cured by this jury instruction. We conclude that the statements made by the defendants' counsel, even if improper, did not substantially prejudice the jury in favor of the defendants.
 
 V.
 
 33
 For the foregoing reasons, we affirm the judgment of the district court.
 
 AFFIRMED